UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6 (lc)

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-2615 PSG (JEMx) | Date | March 14, 2016 |
|---|---|---|---|
| Title | Ignacio G. Villalobos, *et al.* v. John A. Calandri, *et al.* | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**   Order GRANTING Plaintiffs' Motion for Final Approval of FLSA Collective Action Settlement

     Pending before the Court is Plaintiffs' motion for final approval of a Fair Labor Standards Act ("FLSA") collective action settlement. Dkt. # 191. The Court held a Fairness Hearing on March 14, 2016. Having considered the arguments in the original submissions and the supplemental briefing, the Court GRANTS Plaintiffs' motion for final settlement approval.

I.     Background

     Plaintiffs are migrant farm workers who harvested onions for Defendants Calandri Sonrise Farms, LP, Calandri Sonrise Farms LLC, and John Calandri ("Defendants"). Dkt. # 1. Represented by attorneys from California Rural Legal Assistance, Inc. ("CLRA"), Plaintiffs filed this lawsuit on March 28, 2012. *Id.* The allegations against Defendants range from failure to pay minimum wage and issue accurate paystubs to providing inadequate lighting during nighttime harvest and authorizing on-site makeshift housing without plumbing, washing and bathing facilities. *Id.* Plaintiffs filed their operative Fifth Amended Complaint on October 10, 2014. Dkt. # 160. The operative complaint asserts claims for violations of the FLSA, 29 U.S.C. §§ 201, *et seq.*, violation of the Private Attorney Generals Act ("PAGA"), Cal. Lab. Code §§ 2698, *et seq.*, violation of the Migrant and Seasonal Agricultural Worker Protection act ("AWPA"), 29 U.S.C. §§ 1801, *et seq.*, violations of various California Labor Code Provisions, and a California Health & Safety Code violation. *Id.*[1]

---

[1] Plaintiffs previously asserted claims against farm labor contractors ("FLC Defendants") in addition to Defendants, but some of the FLC Defendants successfully secured dismissal of the claims against them on claim preclusion grounds. *See* Dkt. # 22. Plaintiffs dismissed the remaining FLC Defendants from the litigation after they declared bankruptcy. *See* Dkt. # 165.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-2615 PSG (JEMx) | Date | March 14, 2016 |
|---|---|---|---|
| Title | Ignacio G. Villalobos, *et al.* v. John A. Calandri, *et al.* | | |

On November 15, 2013 Judge Gary Feess of the Central District of California granted Plaintiffs' motion to conditionally certify their claims against Defendants for minimum wage violations as an FLSA collective action pursuant to 29 U.S.C. § 216(b).  *See* Dkt. # 69.[2]  CLRA distributed Court-approved FLSA opt-in notices to the addresses of 3,821 potential class action members.  Dkt. # 189-2, ¶ 11.  CLRA also engaged in extensive outreach efforts to notify workers of their rights related to this lawsuit, including in-person community meetings, paid advertisements on Spanish language radio and reports in print news outlets.  *Id.* ¶ 12.  In moving for preliminary settlement approval, CLRA represented that communication with class members is difficult because the members' addresses and phone numbers often change due to their migratory status and because many do not speak English fluently and have low literacy levels in their native language.  *Id.*  ¶¶ 7-8.  Ultimately, 121 people opted into the collective action and filed "Consent to Sue" forms with the Court.  *Id.* ¶ 12.

On December 2, 2014, the case was transferred to this Court due to Judge Feess' retirement.  Dkt. # 167.  The parties attended two in-person mediations hosted by private mediator Scott Markus and, on December 8, 2014, filed a notice of settlement.  *See* Dkt. # 189-2, ¶ 13.  On June 23, 2015, Plaintiffs sought preliminary approval of the Settlement Agreement, including appointing CPT Group, Inc. ("CPT") as Settlement Administrator, approving the form and content of the Proposed Notice, and approving an award of attorneys' fees and costs.  *See* Dkt. # 182.  Because CLRA is a nonprofit entity which receives federal funding, it is prohibited from participating in Rule 23 actions.  *See* Dkt. # 185 at 5.  Accordingly, Plaintiffs did not seek to proceed under Rule 23, but instead sought approval of a Settlement Agreement for an FLSA collective action covering both FLSA claims and state labor claims.  *Id.*  After hearing oral argument, the Court denied the motion on July 22, 2015.  *See* Dkt. # 185.

On September 30, 2015 the parties again sought preliminary approval of the Settlement Agreement.  *See* Dkt. # 189.  Under the proposed Settlement Agreement, Defendants will pay a Gross Settlement Amount of $660,000.  Dkt. # 189-2, Ex. 3 ["Settlement Agreement"], ¶ 44.  From this amount, $205,000 will be directed to pay attorneys' fees and costs ($164,846.71 in fees).  *Id.* ¶ 44(a); Dkt. # 180-2, ¶ 15(e).  $25,000 will be allocated for CPT.  *Id.* ¶ 44(b).  The remaining $430,000 will be allocated to Defendants' workers in various ways.  Because of insufficient records, it is not feasible to make allocations on an individualized basis.  Dkt. # 189-2, ¶ 5.  Instead, each of the 44 named Plaintiffs will receive $5,000 and the remaining 77 collective action members will receive $1,250.  Dkt. # 182-2, ¶ 15(d).  The original three Named

---

[2] "Section 216(b) of the FLSA allows employees to represent similarly situated employees in an action against their employer for failure to pay wages owed." *See Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1340 (N.D. Cal. 2014) (citing 29 U.S.C. § 216(b)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-2615 PSG (JEMx) | Date | March 14, 2016 |
|---|---|---|---|
| Title | Ignacio G. Villalobos, *et al.* v. John A. Calandri, *et al.* | | |

Plaintiffs (Ignacio Villalobos, Adalberto Gomez, and Consuelo Lopez) will each receive a service payment of $3,000 in addition to their $5,000 recover as Named Plaintiffs. *Id.* These payments total $325,250 ($220,000 + $96,250 + $9,000). Because Plaintiffs' counsel is in communication with these members of the settlement class, counsel believes that all funds committed to these individuals will be distributed. Dkt. # 182 at 6.

In moving for preliminary approval, the parties further proposed that $7,866.66 will be set aside as civil penalties awarded under PAGA. Dkt. 189-2, ¶ 8. Pursuant to Cal. Labor Code § 2699(i), 75% of that sum ($5,900) will be awarded to the California Labor and Workforce Development Agency ("LWDA") and the remaining 25% ($1,966.66) will be distributed to PAGA beneficiaries. *Id.* In addition, $96,883.34 in unpaid wages will be paid entirely to the PAGA beneficiaries for a total allocation to the PAGA beneficiaries of $98,850 ($1,966.66 + $96,883.34). *Id.* The parties noted that the $98,850 would be divided among whichever of the 3,671 aggrieved PAGA beneficiaries claimed their PAGA award, with recovery capped at $1,000 per person. Dkt. # 182 at 5.

The Settlement Agreement also provides for prospective non-monetary relief. *See Settlement Agreement* ¶ 42. Defendants agree to include terms in written contracts with farm labor contractors confirming that (1) Onion Harvesters will receive appropriate minimum wage and overtime compensation; (2) Defendants will maintain accurate payroll records; (3) Defendants will provide necessary tools and equipment; (4) Defendants will attempt to limit nighttime work and instead commence the work day at approximately 4 a.m. when possible; (5) Defendants will pay wages by check; and (6) Defendants will comply with Occupational Safety & Health Administration safety requirements, including providing first-aid kits, shade, drinking water and portable bathrooms. *Id.* Defendants will also avoid using any farm labor contractors with business affiliations with former FLC Defendants Maria Ocampo and Juan Munoz, but Defendants can use them if they cannot find a reasonably acceptable farm labor contractor. *Id.* The Settlement Agreement is not limited to the FLSA claims; it settles all claims "asserted in the Action and raised in the operative complaint, or that are based on, arise out of, or relate to the facts alleged in the Action." *Id.* ¶¶ 22, 41.

On December 3, 2015 the Court granted Plaintiffs' motion for preliminary approval of the settlement and appointed CPT as Settlement Administrator. Dkt. # 190. In doing so, the Court approved the proposed notices and an award of attorneys' fees in the amount of $164,846.71. *Id.*

After the court granted preliminary approval, CPT prepared Notice Packets consisting of (1) a notice regarding the collective action claims; (2) a notice regarding PAGA benefits; (3) an exclusion form; and (4) a claim form. Dkt. # 192-2, *Declaration of Ani Shirinian* ["Shirinian

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-2615 PSG (JEMx) | Date | March 14, 2016 |
|---|---|---|---|
| Title | Ignacio G. Villalobos, *et al.* v. John A. Calandri, *et al.* | | |

Decl."], ¶ 4. CPT obtained data files containing the name, most current mailing address and telephone number of 3,864 class members. *Id.* ¶ 5. Of those, 187 did not contain a valid address. *Id.* To update the class list of addresses as accurately as possible, CPT conducted a National Change of Address ("NCOA") search on January 7, 2016.[3] *Id.* ¶ 6. That same day, CPT mailed Notice Packets via U.S. first-class mail to the 3,677 class members with addresses on file. *Id.* ¶ 7.

The Post Office returned a total of 1,609 Notice Packets to CPT, 2 of which contained forwarding addresses. Dkt. # 193-1, *Supplemental Declaration of Ani Shirinian* ["Supp. Shirinian Decl."] ¶ 3. CPT performed a Skip Trace on all returned mail with no forwarding address using Accurint, and has since re-mailed 433 Notice Packets as a result of class member requests or as a result of locating a better address through the Skip Trace.[4] *Id.* ¶¶ 3-4. CPT has deemed a total of 1,299 Notice Packets undeliverable because it could not find a better address for those class members. *Id.* ¶ 5. CPT has received 6 requests for exclusion and no objections. *Id.* ¶¶ 6-7. CPT also notes that the final list of PAGA beneficiaries consisted of 3,864 class members. *Id.* ¶ 10.

Plaintiff's counsel represents that 43 of the 77 opt-in collective action members submitted a timely claims form, representing a 55% response rate. Dkt. # 193, *Declaration of Michael Meuter* ["Meuter Decl."], ¶ 2. The $96,250 of the settlement proceeds allocated for the opt-in collective action members will be divided pro rata among the 43 timely claimants, for a payment of $2,238.37 each. *Id.* ¶ 2. All 44 of the named plaintiffs will receive $5,000 payments, and the original three named plaintiffs will receive an additional $3,000 payment. *Id.* ¶ 4. As for the PAGA beneficiaries, only 42 participants submitted timely claims forms. *Id.* ¶ 3. Each will receive the maximum $1,000 payment. *Id.* The remaining $56,850 will be allocated pro rata ($653.44 each) to each of the 87 other workers participating in the settlement (44 named plaintiffs and 43 opt-in collective action members). *Id.* A payment of $5,900 will be made to the LWDA. *Id.*

Plaintiffs now seek final approval of the Settlement Agreement and an order directing Defendants to pay the total settlement amount of $660,000 in four equal installments of

---

[3] A search of this database provides updated addresses for any individual who has moved in the previous four years and notified the U.S. Postal Service of his or her change of address. *Shirinian Decl.* ¶ 6.

[4] CPT represents that Accurint is one of the most comprehensive address databases available and uses hundreds of databases supplied by credit-reporting agencies, public records and a variety of other national databases. *Shirinian Decl.* ¶ 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-2615 PSG (JEMx) | Date | March 14, 2016 |
|---|---|---|---|
| Title | Ignacio G. Villalobos, *et al.* v. John A. Calandri, *et al.* | | |

$165,000 on March 31, 2016, December 31, 2016, April 30, 2017, and August 1, 2017. Dkt. # 191. Plaintiffs also seek an order confirming $164,846.71 in reasonable attorneys' fees, $40,153.29 in costs, and service payments in the amount of $3,000 to each of the three named Plaintiffs. *Id.*

III.     Legal Standard

The Court is not bound to exercise the same oversight of a settlement of a collective action as it must exercise with a class action under Federal Rule of Civil Procedure 23(e). Whereas the Court's role in supervising the settlement of a class action "protects unnamed class members 'from unjust or unfair settlements affecting their rights,'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997), members of an FLSA collective action have opted-in affirmatively. A court's involvement in the management of their action "has less to do with the due process rights" of those to be bound by a settlement, "and more to do with the named plaintiffs' interest in vigorously pursuing the litigation and the district court's interest in 'managing collective actions in an orderly fashion.'" *McElmurry v. U.S. Bank. Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007).

A court may not approve an FLSA settlement without determining whether it is "a fair and reasonable resolution of a bona fide dispute." *Lewis v. Vision Value, LLC*, No. 1:11-cv-01055-LJO-BAM, 2012 WL 2930867, at *2 (E.D. Cal. July 18, 2012) (quoting *Yue Zhou v. Wang's Rest.*, No. C 05-0279, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007)); *see also Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010) ("courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes"). If the settlement reflects a reasonable compromise over FLSA issues, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lepinske v. Mercedes Homes, Inc.*, No. 6:07-cv-915-Orl-31 DAB, 2008 WL 2694111, at *1 (M.D. Fla. Jul. 7, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

Because of the inherent differences between class actions and individual FLSA settlements, some of the Rule 23 "fairness" factors do not apply to FLSA collective action settlements. *Lewis*, 2012 WL 2930867, at *2. However, "[s]everal courts have regularly applied the Rule 23…factors when evaluating the fairness and reasonableness of an FLSA settlement." *Id.* "These factors include (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-2615 PSG (JEMx) | Date | March 14, 2016 |
|---|---|---|---|
| Title | Ignacio G. Villalobos, *et al.* v. John A. Calandri, *et al.* | | |

governmental participant; and (8) the reaction of the class members to the proposed settlement." *Id.* (citing *Torrisi v. Tuscan Electric Power co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). *Id.*

III.     Discussion

The Court is persuaded that the settlement represents a fair and reasonable resolution of a bona fide dispute. Several of the Rule 23 factors weigh in favor of such a finding.

First, as the Court noted in its December 4, 2015 order, the strength of Plaintiffs' case weighs in favor of finding that the Settlement Agreement is a fair and reasonable resolution. *See* Dkt. # 190. Complications arise from the facts that Plaintiffs and their co-workers were all directly employed by the FLC Defendants, rather than by the Defendants still involved in this action. *Id.* at 5. Plaintiffs admitted that there is a more than nominal risk that Defendants would not be found to be joint employers at trial, precluding Plaintiffs' recovery. *Id.* Even if Defendants were found to be joint employers, they might not be held responsible for the entirety of the alleged violations, which could be seen primarily as the "fault" of the bankrupt FLC Defendants. *Id.* Moreover, the FLC Defendants never provided reliable information concerning how many hours the Plaintiffs and others had worked or how much they were paid, and Defendants themselves lack accurate payroll records. *Id.* As a result, Plaintiffs and the collective action members – most of whom are migrant workers without records of their hours worked – would face extreme difficulty proving damages at trial. *Id.* Plaintiffs' counsel also conceded that it would have been extremely difficult to prove Plaintiffs' housing allegations at trial. *Id.* Because Plaintiffs would face an uphill battle in establishing both Defendants' liability and damages at trial, the $660,000 settlement is fair and reasonable.

Second, the Court notes that the extent of discovery completed and the stage of the proceedings weigh in favor of finding that the Settlement Agreement represents a fair and reasonable resolution of a bona fide dispute. The parties have litigated several motions since the case began in 2012. *See* Dkt. # 1. Plaintiffs are on their fifth amended complaint. The parties have engaged in extensive formal discovery, including depositions, written discovery and motions to compel further discovery. *Mot.* 4; Dkts. # 182-2, ¶ 9; 189-2, ¶ 11. The parties have also engaged in two in-person mediation sessions with a private mediator. *Id.*; Dkt. # 182-2, ¶ 13. Plaintiffs did not negotiate this settlement in a vacuum, but were able to fully consider the strengths and weaknesses of their case. *See In re Mega Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (holding that this factor requires the court to gauge whether plaintiffs have sufficient information to make an informed decision about the merits of their case); *see also Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-2615 PSG (JEMx) | Date | March 14, 2016 |
|---|---|---|---|
| Title | Ignacio G. Villalobos, *et al.* v. John A. Calandri, *et al.* | | |

2007) (holding that the more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases").

Moreover, counsel for both Plaintiffs and Defendants, who have been involved in this litigation from its initiation in 2012, are experienced at litigating complex employment matters and agree that it is in their clients' best interest to settle the matter pursuant to the terms of the Settlement. *Mot.* 4; Dkt. # 191-3, ¶ 3. In determining whether a proposed settlement is fair, a district court should give "[g]reat weight" to the views of experienced class counsel "who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted).

The Court also notes that the reaction of the class members weighs in favor of finding the Settlement Agreement reasonable. CPT has received only 6 requests for exclusion and no objections. *Id.* ¶¶ 6-7. The Court notes the positive response as evidence that the settlement is fair and reasonable. *See Churchill Vill, LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming district court's approval of settlement agreement where, out of 90,000 notified class members, there were 500 opt-outs and 45 objectors); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. 2007) (approving settlement agreement with 2% opt-out rate); *Chun-Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848, 852 (N.D. Cal. 2010) (concluding that the "reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement").

Finally, the Court reiterates its finding from the December 4, 2015 order that the proposed attorneys' fees are fair. *See Yue Zhou*, 2007 WL 2298046, at *1 (noting that an award of attorneys' fees is mandatory under the FLSA); *see also Grove v. ZW Tech, Inc.*, Civil Action No. 11-2445-KHV, 2012 WL 1789100, at *7 (D. Kan. May 7, 2012) (court assessing the reasonableness of a collective action settlement must consider the proposed attorneys' fees). Where counsel seeks fees from a common fund, courts have discretion to use one of two methods to determine whether the request is reasonable: "percentage-of-the-fund" or "lodestar/multiplier." *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). Here, Plaintiffs' counsel requests fees in the amount of $164,846.71, which amounts to just under 25% of the total recovery. *Mot.* 6. Courts in the Ninth Circuit routinely calculate 25% of the fund as a benchmark of reasonableness. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The Court also finds the calculation of attorneys' fees reasonable under the lodestar method. In connection with the motion for preliminary settlement approval, Plaintiffs' counsel submitted an account of 562 hours spent litigating the case and his $515 per hour bill

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-2615 PSG (JEMx) | Date | March 14, 2016 |
|---|---|---|---|
| Title | Ignacio G. Villalobos, *et al.* v. John A. Calandri, *et al.* | | |

rate, resulting in a lodestar of $289,430.[5] Dkt. # 190 at 8. The Court found then, and reiterates here, that Plaintiffs' request of $164,846.71 in attorneys' fees is therefore reasonable.

In sum, the Court is persuaded that given the relative weakness of Plaintiffs' case, the late stage of the litigation, the opinion of experienced counsel and the absence of any objection from FLSA class members, the Settlement Agreement is a fair and reasonable resolution of a bona fide dispute. Plaintiffs' motion for final settlement approval is therefore granted.

IV.  Conclusion

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for final class settlement approval. Defendants are directed to pay CPT the total settlement amount – $660,000 – in four equal installments on March 31, 2016, December 31, 2016, April 30, 2017, and August 1, 2017.

**IT IS SO ORDERED.**

---

[5] Plaintiffs' counsel represented that he actually spent 624 hours litigating the case, but he reduced that number by 10%. Dkt. # 190 at 8.